UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO TOWNSEND,

        Plaintiff,

Case No. 1:23-cv-1023

Hon. Robert J. Jonker

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Lorenzo Townsend, a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendant RN Rosemary Villasan's motion for summary judgment on the basis of exhaustion (ECF No. 51).

    **I.**    **Background**

The Court summarized plaintiff's complaint as follows:

Plaintiff is a Buddhist and a strict vegan and has been recognized as an adherent by the MDOC since December 11, 2007. Plaintiff also asserts that he was ordained on October 24, 2000, and was granted the title of Buddhist Monk on March 27, 2014. [Compl. at PageID.3.]

On January 19, 2023, Plaintiff asked Defendant Groff to note in his medical records that he was a practicing Buddhist and a strict vegan who could not take a T.B. test because it contains human or animal derivatives and byproducts. Plaintiff sought to be provided with a chest x-ray as an alternative test. Defendant Groff assured Plaintiff that the information would be placed in his record, and Plaintiff told her that he believed he would be called out later that day for a T.B. test. (*Id.*)

Later that day, Plaintiff was called out to healthcare where Defendant Bowerman told Plaintiff that he had to submit to a T.B. test. Plaintiff objected to

1

> the test on religious grounds but was told that his file did not contain that information. Defendant Bowerman consulted with Defendant Villasan, who indicated that Plaintiff would be placed in segregation if he did not take the test. Plaintiff states that he agreed to take the test as a direct result of the threat. (*Id*.)
>
> Plaintiff asserts that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000, *et seq*. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id*. at PageID.4-5.)

Opinion (ECF No. 11, PageID.37-38).

The Court dismissed a number of claims and concluded that,

> Plaintiff's First Amendment free exercise claims against Defendants Groff, Villasan, and Bowerman, and his RLUIPA claims for declaratory and injunctive relief against these Defendants will remain in the case.

*Id*. at PageID.44.  As discussed, defendant RN Villasan has moved for summary judgment on the basis of exhaustion (ECF No. 51).

## II.     Summary Judgment

### A.     Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Lack of Exhaustion

#### 1.     Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural

rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

RN Villasan points out that when plaintiff filed this complaint[1], he had filed one Step III grievance related to the allegations in this lawsuit, LCF-23-01-0131-27b ("131"). That grievance involved an incident date of January 19, 2023, and was directed at the MDOC, Wellpath, defendant NP S. Groff and RN Bowerman, with plaintiff stating:

> This grievance is against the MDOC and its Medical Provider, Wellpath, and its agents and employees, Nurse Practitioner (NP) S, Groff, and Registered Nurse Bowerman, for forcing me to take a TB test under the threat of being confined to segregation in violation of my religious beliefs and practices.

Grievance 131 (ECF No. 23-3, PageID.108). RN Villasan was mentioned later in the grievance as a person who spoke to RN Bowerman (in plaintiff's words):

> FACTS: On 1-19-2023, I was seen in healthcare by NP Groff and advised her that I couldn't take a TB test because it contains animal byproducts. I am practicing Buddhist and strict vegetarian. NP Groff indicted that she was going to place this information in my medical chart, but failed to do so. I inform NP Groff that I was on call at 17:20 on the same day at 17:20 for the shot. That is, on 1-19-2023, I was again on callout to Healthcare and was seen by RN Bowerman, who advised me that she was going to administer a TB test, When I advised her that NP Groff had charted my sincerely held religious beliefs and practices in my medical file, RN Bowerman checked and discovered that no information regarding my beliefs had been charted by NP Groff. RN Bowerman had me sit out in the hallway, so she can ask another RN about it. Which it was RN Villasan. RN Villasan stated to RN Bowerman, if he (Townsend) never had any allerge reaction before, then he can take the regular T.B. shot again. Than RN Bowerman threatened that if I refused the TB test I would have to be placed in segregation. As a direct result of this threat, I took the test.
>
> I therefore contend that forcing me to take a TB test that contains animal byproducts under threat of duress, in violation of my sincerely held religious beliefs, violates my rights under the First Amendment to the United States Constitution and Michigan Constitution, and the Religious Freedom Restoration

---

[1] Under the prison mailbox rule, a prisoner's court papers are deemed filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Under this relaxed filing standard, a *pro se* prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted). Under the prison mailbox rule, plaintiff's complaint was filed on September 25, 2023 (when plaintiff signed and dated the complaint) (PageID.5).

> Act, 42 U.S.C. § 2000bb.  Because there is clearly an alternative test that can be conducted to determine if I have TB: an X-ray, that does not violate my religious beliefs and practices. I further saith not.

*Id*.  The grievance was "Rejected per PD 03.02.130 – Policy, Procedure & DOM's are Non Grievable" and referred plaintiff to PD 04.01.150 to address facility procedures.  *Id*.  The rejection was upheld at Steps II and III.  PageID.106-107.

In her motion, RN Villasan concedes that the rejection was improper (*i.e.*, "Townsend was attempting to grieve the specific conduct of NP Groff (i.e., her negligence) and RN Bowerman (i.e., her failure to accommodate and threats), and not the specific contents of policy").  Defendant's Brief (ECF No. 52, PageID.265).  However, RN Villasan contends that plaintiff did not exhaust any claims against her, because Grievance 131 was filed against defendants NP Groff and RN Bowerman:

> Although Townsend was aware of RN Villasan and described her actions at Step I, he chose not to name he as a subject of the grievance but named only NP Groff and RN Bowerman. It is thus apparent that Townsend wrote LCF-131 to contest the conduct of only NP Groff and RN Bowerman.

*Id*.

"[W]here a prisoner names specific individuals at Step I of the grievance process, prison officials would naturally assume that the prisoner complied with exhaustion requirements for those named at Step I." *Hall v. Cole*, No. 2:23-cv-28, 2024 WL 4884613 at *4 (Oct. 25, 2024), *R&R adopted*, 2024 WL 4880598 (W.D. Mich. Nov. 25, 2024) (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) and *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159 at *3 (6th Cir. April 23, 2019)).  "Thus, when specific individuals are named at Step I, exhaustion is limited to the named individuals." *Id*.  *See also*, *Bickham v. Vanderschaegen*, No. 2:22-cv-182, 2024 WL 3541545 at *5 (June 25, 2024), *R&R adopted*, 2024 WL 3540243 (W.D. Mich. July 25, 2024) ("By naming specific individuals, [the plaintiff prisoner] limited the exhaustion of the claims

within his grievance to those individuals."). As discussed, plaintiff explicitly directed Grievance 131 against the MDOC, Wellpath, NP Groff and RN Bowerman. Accordingly, plaintiff did not exhaust a grievance against RN Villasan.

After the briefing was closed, plaintiff filed an "Addendum to Plaintiff's Reply to Defendant's Motion for summary judgment on failure to exhaust" (ECF No. 60), in which he contends that defendant's motion is moot because in *Perttu v. Richards*, 605 U.S. 460 (2025), "[t]he United States Supreme Court has ruled that the issue of exhaustion of administrative remedies is a matter for the jury under the Seventh Amendment."

In *Perttu*, 605 U.S. 460 at 479, the Supreme Court held "that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." However, *Perttu* does not apply here. First, the factual issues of exhaustion are not intertwined with the merits of plaintiff's free-exercise claims and RLUIPA claims. Second, plaintiff has not identified a genuine issue of material fact related to exhaustion which a jury could decide at trial.

Based on this record, plaintiff did not properly exhaust a grievance to support his claim against defendant RN Villasan. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Villasan's motion for summary judgment should be granted.

### IV. Recommendation

For these reasons, I respectfully recommend that defendant Rosemary Villasan's motion for summary judgment (ECF No. 51) be **GRANTED** and that she be **DISMISSED**.

Dated:  December 8, 2025                                         /s/ Ray Kent
                                                                 RAY KENT
                                                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).